**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHAD JOHNSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CITY OF CHICAGO, RON KIMBALL, | ) | Judge |
| DETECTIVE KEVIN O'BRIEN, | ) | |
| STAR NO. 60001, P.O. VANESSA | ) | |
| MUHAMMAD, STAR NO. 12835, | ) | |
| DETECTIVE KAREN WILLIAMS, | ) | |
| STAR NO. 20837, DETECTIVE | ) | |
| THOMAS CEPEDA, DETECTIVE | ) | |
| MICHAEL O'DONNELL, DETECTIVE | ) | JURY TRIAL DEMANDED |
| E. JACKSON, STAR NO. 21250, | ) | |
| DETECTIVE WILLIAM PROCTOR, | ) | |
| STAR NO. 20139, DETECTIVE | ) | |
| WILLIAM GEHRKE, STAR NO. 20385, | ) | |
| SGT. K. WILLIAMS. STAR NO. 2870, | ) | |
| P.O. SOLTIS, STAR NO. 19523, | ) | |
| DANIEL GORMAN, SGT. RAJKOVICH, | ) | |
| STAR NO. 2193, LT. LAJEWSKI, | ) | |
| STAR NO. 516, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

NOW COMES Plaintiff CHAD JOHNSON, by and through his attorneys, Devlin J. Schoop and Christopher W. Carmichael of HENDERSON PARKS, LLC, and complains against Defendants CITY OF CHICAGO, RON KIMBALL, KEVIN O'BRIEN, VANESSA MUHAMMAD, KAREN WILLIAMS, THOMAS CEPEDA, MICHAEL O'DONNELL, E. JACKSON, WILLIAM PROCTOR, WILLIAM GEHRKE, SGT. K. WILLIAMS, P.O. SOLTIS, DANIEL GORMAN, SGT. RAJKOVICH, and LT. LAJEWSKI as follows:

## INTRODUCTION

1.      On February 1, 2004, Super Bowl Sunday, a drive-by shooting occurred outside Mr. G's Food and Liquor Store located at 332 E. 58th Street in Chicago, Illinois.  Christopher Dorbin, Desi Jones, Kentrae Wade and Carol Holt were all injured by the shots that were fired, and Dorbin later died of his injuries on March 18, 2004.

2.      Plaintiff CHAD JOHNSON, a man who was innocent of the crimes committed outside of Mr. G.'s on February 1, 2004, was later detained and charged in connection with these shootings that he did not commit.

3.       On March 29, 2007, Indictment Number 07 CR 7156 was issued against Plaintiff CHAD JOHNSON for eight counts of first-degree murder, three counts of attempted first-degree murder, three counts of aggravated battery with a firearm, three counts of aggravated discharge of a firearm, nine counts of aggravated battery, and four counts of aggravated unlawful use of a weapon.  Plaintiff CHAD JOHNSON was and is actually innocent of these charges.

4.      Plaintiff CHAD JOHNSON was and is actually innocent of all of these charges because he was not inside the City of Chicago on February 1, 2004 and had never discharged a firearm at anyone outside of Mr. G's as alleged in the criminal indictment unlawfully initiated against Plaintiff CHAD JOHNSON based on fabricated reports and misinformation supplied by the individual defendants during the course of their investigation of the February 1, 2004 Mr. G's shooting and during two (2) subsequent criminal proceedings in the Circuit Court of Cook County.

5.      In March 2009, after a two-day jury trial, Plaintiff CHAD JOHNSON was convicted on one count of first-degree murder of Christopher Dorbin, and three counts of aggravated discharge of a firearm from a vehicle.

6.     Cook County Circuit Judge Diane Gordon Cannon sentenced Plaintiff CHAD JOHNSON to fifty (50) years for first degree murder and ten years for each of the three counts of aggravated battery with a firearm, with all of the sentences to run consecutively, for a total of eighty (80) years to be served in the custody of the Illinois Department of Corrections.

7.     On March 23, 2012, the Illinois Appellate Court, First District, reversed the conviction of Plaintiff CHAD JOHNSON and remanded the criminal proceeding for a new trial. *See* January 12, 2017, Order attached as Exhibit A.

8.     Upon remand by the Illinois Appellate Court, First District, and at the express direction of the appellate court, Plaintiff CHAD JOHNSON had his criminal proceeding reassigned from Cook County Judge Diane Gordon Cannon and assigned to the Cook County Associate Judge Joseph Clapps for a new trial.

9.     A second jury trial of Plaintiff CHAD JOHNSON was convened in June 2018.

10.     On June 11, 2018, a jury found Plaintiff CHAD JOHNSON not guilty of all counts.

11.     Plaintiff CHAD JOHNSON was released from the custody of the Cook County Department of Corrections the following day on June 12, 2018.

12.     By the time of his release from custody, Plaintiff CHAD JOHNSON had been unlawfully detained as a result of the two (2) criminal proceeding for approximately seven (7) years for crimes that Plaintiff CHAD JOHNSON did not commit.

## JURISDICTION AND VENUE

13.     The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1331 and § 1343(a), the Constitution of the United States, and supplemental jurisdiction, as provided under 28 U.S.C. § 1367(a).

14.    Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. §1391 because because the acts and events giving rise to the complaint occurred in the Northern District of Illinois, Eastern Division and because, upon information and belief, the Defendants reside here.

## PARTIES

15.    Plaintiff CHAD JOHNSON is currently a citizen of the United States and resident of the City of Chicago, Illinois.  At the time of the events at issue, Plaintiff CHAD JOHNSON was residing in the State of Kentucky until Defendants unlawfully initiated criminal proceedings against him.

16.    Defendant CITY OF CHICAGO is and was, at all times mentioned herein, an Illinois municipal corporation organized and existing as such under the laws of the State of Illinois. Defendant CITY OF CHICAGO is liable under the doctrine of *respondeat superior* for all torts committed by its employees and/or agents, including the named individual defendants who, at all times mentioned herein, were employees of the CITY OF CHICAGO and acting within the scope of their employment.

17.    Defendant RON KIMBALL is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, he was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO.  He is being sued in his individual capacity.

18.    Defendant KEVIN O'BRIEN is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, he was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO.  He is being sued in his individual capacity.

19.     Defendant VANESSA MUHAMMAD is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, she was acting under color of state law and within the scope of her employment for the CITY OF CHICAGO.  She is being sued in her individual capacity.

20.     Defendant KAREN WILLIAMS, is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, she was acting under color of state law and within the scope of her employment for the CITY OF CHICAGO.  She is being sued in her individual capacity.

21.     Defendant THOMAS CEPEDA is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, he was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO.  He is being sued in his individual capacity.

22.     Defendant MICHAEL O'DONNELL is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, he was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO.  He is being sued in his individual capacity.

23.     Defendant E. JACKSON is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, Defendant E. JACKSON was acting under color of state law and within the scope of Jackson's employment for the CITY OF CHICAGO.  Defendant E. JACKSON is being sued in Jackson's individual capacity.

24.     Defendant WILLIAM PROCTOR is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein

mentioned, he was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO. He is being sued in his individual capacity.

25.     Defendant WILLIAM GEHRKE is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court. At all times herein mentioned, he was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO. He is being sued in his individual capacity.

26.     Defendant K. WILLIAMS is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court. At all times herein mentioned, Defendant K. WILLIAMS was acting under color of state law and within the scope of Williams' employment for the CITY OF CHICAGO. Defendant K. WILLIAMS is being sued in Williams' individual capacity.

27.     Defendant P.O. SOLTIS is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court. At all times herein mentioned, Defendant P.O. SOLTIS was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO. P.O. SOLTIS is being sued in his individual capacity.

28.     Defendant DANIEL GORMAN is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court. At all times herein mentioned, he was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO. He is being sued in his individual capacity.

29.     Defendant SGT. RAJKOVICH is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court. At all times herein mentioned, he was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO. He is being sued in his individual capacity.

30.     Defendant LT. LAJEWSKI is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.  At all times herein mentioned, he was acting under color of state law and within the scope of his employment for the CITY OF CHICAGO.  He is being sued in his individual capacity.

## FACTS COMMON TO ALL CLAIMS

### Chad Johnson was in Fulton, Kentucky on February 1, 2004

31.     On February 1, 2004, Plaintiff CHAD JOHNSON was never physically present inside the City of Chicago and it was impossible for him to be.  At the time, Plaintiff CHAD JOHNSON was residing in Fulton, Kentucky, living with his girlfriend, Joyce Williams.

32.     On February 1, 2004, at least three different eyewitnesses observed how Plaintiff CHAD JOHNSON was, in fact, physically present in Fulton, Kentucky on February 1, 2004, including his girlfriend, Joyce Williams who spoke with CHAD JOHNSON before going shopping with her mother that day; and Ora Russell (Joyce's mother) who saw CHAD JOHNSON speaking with Joyce moments before Joyce and Ora went shopping on February 1, 2004.

33.     Later that same day, CHAD JOHNSON attended a Super Bowl party at the Spot Bar and Grill which is also located in Fulton, Kentucky.  Gloria Johnson, a bartender at the Spot Bar, observed CHAD JOHNSON present both in the parking lot when she arrived to work at approximately 4:30 p.m. that day, and later, inside the bar, while the Super Bowl game was still underway.[1]

---

[1] The 2004 Super Bowl was memorable for reasons independent of the game itself.  2004 was NFL Super Bowl XXXVIII between the Carolina Panthers and New England Patriots; the Patriots defeated the Panthers, 32-29.  But what many people remember the most about that Super Bowl was the half-time performance of Janet Jackson and Justin Timberlake during which Ms. Jackson experienced the famous "wardrobe malfunction" causing one of her breasts to be briefly exposed from her outfit on live television.

**The noon drive-by shooting at Mr. G's on February 1, 2004**

34.     On February 1, 2004, Mr. G's Food and Liquor Store was a local grocery and liquor store located at 332 E. 58th Street in Chicago, Illinois.  Mr. G.'s is located on 58th Street between Calumet and Prairie Avenues.

35.     Just before noon, a dark-colored four-door Dodge Intrepid sports utility vehicle was driving the wrong way -- southbound -- on the 5800 south block of Calumet Avenue in Chicago. The 5800 south block of Calumet Avenue is designated as a one-way street with traffic travelling in a northbound direction.

36.     The Dodge Intrepid turned onto 58th Street and, as it passed Mr. G.'s, a masked gunman pointed a gun out of an open window and opened fire on a group of persons standing outside Mr. G's.

37.     Christopher Dorbin, Desi Jones, Kentrae Wade and Carol Holt were all injured by the shots that were fired.

38.     On March 18, 2004, Christopher Dorbin later died from the injuries that he sustained from the February 1, 2004 drive-by shooting.

39.     Defendant VANESSA MUHAMMAD was on duty in the vicinity of Mr. G's and was one of the officers who initially responded to the shooting.  Upon her arrival, Defendant VANESSA MUHAMMAD was considered "the paper car" and interviewed several witnesses as part of what would become the Chicago Police Department's "investigation" of the February 1, 2004 drive-by shooting at Mr. G's.

40.     On February 1, 2004, Defendants KEVIN O'BRIEN and MICHAEL O'DONNELL were detectives with the Chicago Police Department assigned to what was

previously known to as the Chicago Police Department's "Area 1," a specific geographic area of the city wherein the Chicago Police department patrols and investigates crimes.

41. On February 1, 2004, Defendants KEVIN O'BRIEN and MICHAEL O'DONNELL were partners and were assigned to investigate the Mr. G.'s drive-by shooting. Defendant KEVIN O'BRIEN was the lead detective and his partner, Defendant MICHAEL O'DONNELL was his second in charge of the "investigation."

### The investigation and false identification

42. Defendants VANESSA MUHAMMAD, KAREN WILLIAMS, THOMAS CEPEDA, E. JACKSON, WILLIAM PROCTOR, WILLIAM GEHRKE, SGT. K. WILLIAMS, P.O. SOLTIS, DANIEL GORMAN, SGT. RAJKOVICH and LT. LAJEWSKI assisted Defendants KEVIN O'BRIEN and MICHAEL O'DONNELL with their investigation, by, among other things, allegedly interviewing witnesses at the scene, conducting a canvass of the area, securing potential evidence, including spent shell casings from the bullets discharged from the dark-colored Dodge Intrepid and, upon information and belief, attempting to locate and secure third-party video surveillance footage that might have assisted in the positive identification of the persons occupying the dark-colored Dodge Intrepid.

43. The Chicago Police Department has never located the dark-colored Dodge Intrepid used to commit the February 1, 2004 Mr. G.'s drive-by shooting.

44. Apart from spent shell casings found at the shooting scene outside of Mr. G's, the Chicago Police Department never recovered any physical evidence of the drive-by shooting prior to initiating criminal proceedings against Plaintiff CHAD JOHNSON for the February 1, 2004 Mr. G.'s drive-by shooting.

45.     The Defendants never recovered fingerprints belonging to Plaintiff CHAD JOHNSON from any of the spent shell casings found at the shooting scene.

46.     The Defendants never recovered blood, sweat or any other form of DNA evidence linking Plaintiff CHAD JOHNSON to the February 1, 2004 Mr. G's drive-by shooting.

47.     The Defendants, on information and belief, did not recover third-party video surveillance footage and/or bystander cellphone video or still pictures capturing the drive-by shooting to enable the authorities to accurately and reliably identify the physical description of the vehicle, the occupants of the vehicle and/or the types of weapons used to commit the drive-by shooting.

48.     On the day of the shooting, the Defendants interviewed some, but not all, of the persons who witnessed what had happened, including Carol Holt who had been shot that day.  Holt informed the Defendants that Holt was unable to identify any of the occupants of the vehicle used to commit the drive-by shooting.

49.     The Defendants interviewed by-stander Stacey Murray, who informed the Defendants that Murray was able to identify two (2) men -- Ricardo Lee and Oliver "OC" Crawford -- as occupants of the vehicle used in the drive-by.  Stacey Murray did not identify Plaintiff CHAD JOHNSON to any of the Defendants as being an occupant in the vehicle.

50.     Upon information and belief, while still on scene, Defendants VANESSA MUHAMMAD and KAREN WILLIAMS, interviewed Christopher Dorbin, who only identified Ricardo Lee and Oliver Crawford as occupants of the Dodge Intrepid.

51.     Upon information and belief, prior to his death, Christopher Dorbin gave no electronically recorded interview ("ERI") and did not give a written statement ever identifying

Plaintiff CHAD JOHNSON as being present on February 1, 2004 or being any of the people who opened fire at Christopher Dorbin, Desi Jones, Kentrae Wade and/or Carol Holt that day.

52.     Desi Jones, a self-admitted member of the Gangster Disciples street gang, was interviewed by Defendant KAREN WILLIAMS wherein Jones allegedly identified Plaintiff CHAD JOHNSON as an occupant of the dark-colored Dodge Intrepid and one of the persons who shot at Jones. However, during the course of the Defendants' investigation, the Defendants knew that Jones had a motivation to give a false statement against Plaintiff CHAD JOHNSON due to personal animosity harbored by Jones against Plaintiff CHAD JOHNSON because of an ongoing gang conflict on 58th Street involving competing factions of the Gangster Disciples street gang.

53.     Upon information and belief, the Defendants knew that Desi Jones was lying about Plaintiff CHAD JOHNSON because the Defendants learned about the existence of at least two (2) eyewitnesses who unequivocally stated that Plaintiff CHAD JOHNSON was not a participant in the shooting, and further information that Desi Jones admittedly did not see the faces of the persons who fired the shots and identified Plaintiff CHAD JOHNSON solely out of retribution.

54.     Specifically, during the course of the criminal investigation, the Defendants were aware of Arthur Randle, a neighborhood barber and mutual friend of both Desi Jones and Plaintiff CHAD JOHNSON.

55.     Approximately three (3) weeks after the Mr. G's shooting, Desi Jones told Randle that Jones had, in fact, not seen the person who fired the shots at Jones, Dorbin, Wade and Murray.

56.     During the March 2009 trial, during cross-examination by counsel for Plaintiff CHAD JOHNSON, Defendant VANESSA MUHAMMAD admitted, under oath, that Christopher Dorbin had told Defendant VANESSA MUHAMMAD, that Crawford and Lee were the only persons in the Dodge Intrepid, and that Kentrae Wade had told Defendant VANESSA

MUHAMMAD that only Crawford was in the back seat of the Dodge Intrepid and that Wade was unable to identify anyone else in the vehicle.

**Eyewitness Joe Cobbins' February 1, 2004 contact with Chicago Police Detective Ron Kimball to relate material information about the Mr. G's drive-by shooting**

57.     During the course of the Defendants' "investigation" of the February 1, 2004 Mr. G.'s shooting, the Defendants became aware of another eyewitness who was able to provide evidence which would exculpate Plaintiff CHAD JOHNSON from the Mr. G.'s shooting: Joe Cobbins.

58.     On February 1, 2004, Joe Cobbins, was walking on 58th Street and observed the dark-colored Dodge Intrepid approach Mr. G's.  Joe Cobbins had a clear and unobstructed view of the events that transpired.

59.     Mr. Cobbins saw that three (3) men were occupying the dark-colored Dodge Intrepid.  All three of the men were wearing ski-masks, making it impossible for any person to identify the perpetrators by facial recognition.  Mr. Cobbins was able to observe the men through the front windshield which was the only window of the vehicle that did not have tinted glass.

60.     Mr. Cobbins observed the dark-colored Dodge Intrepid drive pass Mr. G.'s and witnessed multiple gunshots being fired from the dark-colored Dodge Intrepid, striking several persons standing in front of Mr. G.'s.

61.     After the dark-colored Dodge Intrepid fled the scene, Mr. Cobbins returned to his nearby residence to gather himself after witnessing the incident.

62.     While standing on the back porch of his residence, Mr. Cobbins saw the dark-colored Dodge Intrepid driving down the alley behind his apartment and stop behind the garage belonging to the apartment adjacent to Mr. Cobbins' apartment.

63.     While standing on his back porch, Cobbins observed a man wearing a ski mask exit the dark-colored Dodge Intrepid.  The man was wearing a black ski-mask and holding what appeared to be a laundry bag over his shoulder.  As the man was standing next to the Dodge Intrepid, he rolled up his ski mask revealing his face.  Mr. Cobbins immediately recognized the person as Radsheen Shepard.  Shepard, whose nickname was "Debo," lived in the apartment building immediately adjacent to Mr. Cobbins.

64.     Mr. Cobbins also observed two (2) other men sitting in the dark-colored Dodge Intrepid.  While, neither of the men exited the vehicle or removed their masks, Mr. Cobbins was able to observe their general physical builds.

65.     Mr. Cobbins observed Shepard enter the apartment building next door, carrying what appeared to be a laundry bag.  Having just recently observed the Mr. G's shooting, Mr. Cobbins immediately believed that Shepard and the two other men sitting in the Dodge Intrepid were the perpetrators of the Mr. G's shooting because they all wore the same black ski masks and were in a dark-colored Dodge Intrepid similar to the one that he had observed earlier.

66.     A few minutes later, Mr. Cobbins observed Shepard exit his apartment building without the laundry bag.  Mr. Cobbins suspected that Shepard had used the laundry bag to transport the weapons used in the earlier drive-by shooting into the apartment.

67.     Mr. Cobbins contacted Defendant RON KIMBALL, a Chicago Police Detective known to Mr. Cobbins.  Mr. Cobbins informed Defendant RON KIMBALL all that Mr. Cobbins had observed, including how he saw: the shooting transpire outside Mr. G.'s; Shepard a/k/a "Debo" exit from the same dark-colored Dodge Intrepid used in the Mr. G's shooting wearing a black ski-mask; Shepard lift up his ski-mask revealing his face; Shepard carrying the laundry bag into his apartment which Mr. Cobbins believed was used to carry the weapons into Shepard's  apartment.

68.     The information that Mr. Cobbins related to Defendant RON KIMBALL was obviously material to the investigation because it contradicted any purported eyewitness account of Desi Jones or any of the other persons shot outside who claimed to have seen the face of any alleged shooters because, as confirmed by Mr. Cobbins, all of the occupants inside the dark-colored Dodge Intrepid were wearing black ski-masks.

69.     The information that Mr. Cobbins related to Defendant RON KIMBALL was obviously material to the investigation because it contradicted any purported eyewitness account that Plaintiff CHAD JOHNSON participated in the Mr. G's drive-by shooting because, as confirmed by Mr. Cobbins, it was Shepard -- not Plaintiff CHAD JOHNSON -- who Mr. Cobbins observed wearing a ski-mask after exiting the same dark-color Dodge Intrepid shortly after the drive-by shooting, carrying a bag that clearly was being used to conceal the weapons used to commit the crime while Shepard took them inside his apartment.

70.     The information that Mr. Cobbins related to Defendant RON KIMBALL was obviously material to the investigation because it would have provided the Defendants with probable cause to obtain a search warrant of Shepard's apartment to search for the weapons used to commit the Mr. G.'s drive-by shooting.

71.     Later, after learning that Plaintiff CHAD JOHNSON had been charged with the Mr. G's shooting, Mr. Cobbins again contacted Defendant RON KIMBALL to reiterate what Mr. Cobbins had related in his earlier conversation with Defendant RON KIMBALL, this time adding the detail that Mr. Cobbins did not believe that Plaintiff CHAD JOHNSON was involved in the Mr. G's shooting because Mr. Cobbins actually saw Shepard's face when he lifted up his ski-mask and the other two masked men were, physically, too small to be Plaintiff CHAD JOHNSON who stands over 6 feet tall and has a large physical stature.

72.    Defendant RON KIMBALL said that he would relate this information to the investigating detectives and would follow-up again with Mr. Cobbins, but never contacted Mr. Cobbins again concerning the status of the information Mr. Cobbins had related to Defendant RON KIMBALL.

73.    Upon information and belief, Defendant RON KIMBALL related this exculpatory information to the other Defendants and the Defendants knowingly and intentionally agreed to omit this information from all investigatory reports and knowingly and intentionally failed to disclose the existence of Mr. Cobbins' information any time during the shooting investigation or at any time during the pendency of Plaintiff CHAD JOHNSON's first trial in March 2009 or second trial in June 2018.

74.    Upon information and belief, Defendant RON KIMBALL related this exculpatory information to the other Defendants and the Defendant knowingly and intentionally agreed to conduct no follow-up investigation on the information related by Mr. Cobbins, including intentionally failing to obtain a search warrant of Shepard's home to locate the weapons used to commit the Mr. G.'s drive-by shooting.

**The 2009 recovery of the murder weapon that went uninvestigated by Defendants**

75.    On March 28, 2009, Chicago Police Officers Andrew Schurman and Steve Lavell were tactical officers assigned to Chicago Police Department's Seventh District.   Officers Schurman and Lavell did not respond to the February 1, 2004 Mr. G's drive-by shooting and never participated in the subsequent criminal investigation of the drive-by shooting.

76.    On March 28, 2009, while on routine patrol, Defendants responded to a call concerning a fight at a gas station located at 5901 South Morgan Street.

77.     Upon arriving at the gas station, Officers Schurman and Lavell observed a large group of people congregating in the gas station and blue car parked near a gas pump.  As Officers Schurman and Lavell approached the blue car, they observed a male throw what was later determined to be a handgun from the passenger side window.

78.     Officers Schurman and Lavell detained and arrested the person observed throwing the handgun out of the passenger side window and learned that the person was 17-year-old "R.C."[2]

79.     The handgun retrieved from R.C. was sent to the forensics laboratory of the Illinois State Police and was determined to be a weapon from which at least one bullet was discharged on February 1, 2004 during the Mr. G's drive-by shooting.

80.     Upon information and belief, the Defendants were made aware of the recovered handgun and how the Illinois State Police had connected the recovered handgun with the Mr. G.'s drive-by shooting, but knowingly and intentionally declined to conduct any follow-up investigation of R.C. to determine the circumstances in which R.C. acquired the handgun because the Defendants instead wanted to rely on what they knew was knowingly false evidence from Desi Jones in order to maintain the wrongful conviction that had only recently been obtained against Plaintiff CHAD JOHNSON as a result of the Defendants knowing and intentional concealment of exculpatory evidence, including exculpatory statements from Arthur Randle and Joe Cobbins.

---

[2] R.C. was a minor at the time of arrest, prohibiting counsel from identifying him by his full name due to the Illinois Juvenile Court Act.  Upon entry of the appropriate confidentiality order, Plaintiff will disclose the identity of "R.C." as required by Fed. R. Civ. P. 26(a)(1) or any disclosure requirements mandated by the local rules of Northern District of Illinois.

**COUNT I**
**42 U.S.C. § 1983 – Illegal Pretrial Detention (*Manuel*)**

**Against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and Lt. Lajewski**

81.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

82.     Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski deprived Plaintiff CHAD JOHNSON of fair criminal proceedings.

83.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff CHAD JOHNSON's constitutional rights.

84.     Plaintiff CHAD JOHNSON'S detention of approximately seven (7) years was due to the Defendants' fabricated evidence in their police reports, criminal complaints and/or testimony rendered during the underlying criminal proceedings in the matter captioned *People of the State of Illinois v. Chad Johnson*, 07 CR 0715602.

85.     As a result of this misconduct, Plaintiff CHAD JOHNSON was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

WHEREFORE, Plaintiff CHAD JOHNSON demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski for compensatory damages, punitive damages, costs,

reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

## COUNT II
### 42 U.S.C. § 1983 – Conspiracy to Deprive of Constitutional Rights

**Against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and Lt. Lajewski**

86.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

87.     Each of the Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Plaintiff CHAD JOHNSON of his constitutional rights.

88.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the false conviction of Plaintiff CHAD JOHNSON) by unlawful means (including, falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

89.     In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

90.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff CHAD JOHNSON's constitutional rights.

WHEREFORE, Plaintiff CHAD JOHNSON demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

## COUNT III
## 42 U.S.C. § 1983 – Failure to Intervene

**Against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and Lt. Lajewski**

91.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

92.     During the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff CHAD JOHNSON's constitutional rights, even though they had the opportunity to do so.

93.     The Defendants each refused to intervene and report or disclose exculpatory information learned during the course of the underlying criminal investigation in furtherance of the "code of silence" within the Chicago Police Department which the Defendant CITY OF CHICAGO endorses and encourages through policies, customs and practices promoted by Defendant CITY OF CHICAGO.

94.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff CHAD JOHNSON's constitutional rights.

95.     As a result of Defendants' misconduct described in this Count, Plaintiff CHAD JOHNSON was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

WHEREFORE, Plaintiff CHAD JOHNSON demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski for compensatory damages, punitive damages, costs,

reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

**COUNT IV**
**State Law Claim – Malicious Prosecution (The First Trial before Judge Cannon)**

**Against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and Lt. Lajewski**

96.     Each of the foregoing paragraphs are incorporated as if restated fully herein.

97.     The Defendants caused a criminal prosecution to commence and/or continue against Plaintiff CHAD JOHNSON resulting in the March 2009 criminal proceeding before Cook County Circuit Judge Diane Gordon Cannon.

98.     The Defendants maliciously commenced and/or continued a criminal prosecution against Plaintiff CHAD JOHNSON without probable cause for the commencement and/or continuation of those proceedings before Judge Diane Gordon Cannon. As a result, Plaintiff CHAD JOHNSON was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

99.     Each and every individual Defendant, initiated, facilitated and/or continued this malicious prosecution by the creation of manufactured and fabricated evidence, including writing false police reports, preparing and signing false criminal complaints, conducting unduly prejudicial, misleading, suggestive and/or coercive physical lineups or photo arrays, giving false testimony and/or otherwise wrongfully misrepresenting and/or withholding evidence.

100.    The criminal proceedings were ultimately terminated in Plaintiff CHAD JOHNSON's favor as a result of the First District Appellate Court decision which overturned Plaintiff Chad Johnson's criminal conviction.

WHEREFORE, Plaintiff CHAD JOHNSON demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

### COUNT V
### State Law Claim – Malicious Prosecution (The Second Trial before Judge Clapps)

**Against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and Lt. Lajewski**

101.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

102.    The Defendants caused a criminal prosecution to commence and/or continue against Plaintiff CHAD JOHNSON resulting in the June 2018 re-trial of Plaintiff CHAD JOHNSON before Cook County Associate Judge Joseph Clapps.

103.    The Defendants maliciously commenced and/or continued a criminal prosecution against Plaintiff CHAD JOHNSON without probable cause for the commencement and/or continuation of those proceedings before Cook County Associate Judge Joseph Clapps.  As a result, Plaintiff CHAD JOHNSON was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

104.    Each and every individual Defendant, initiated, facilitated and/or continued this malicious prosecution by the creation of manufactured and fabricated evidence, including writing false police reports, preparing and signing false criminal complaints, conducting unduly prejudicial, misleading, suggestive and/or coercive physical lineups or photo arrays, giving false testimony and/or otherwise wrongfully misrepresenting and/or withholding evidence.

105.    The criminal proceedings were terminated in Plaintiff CHAD JOHNSON's favor on June 11, 2018 when the jury found Plaintiff CHAD JOHNSON not guilty in a manner indicative of his actual innocence of the crimes charged.

WHEREFORE, Plaintiff CHAD JOHNSON demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## COUNT VI
### State Law Claim – Intentional Infliction of Emotional Distress

**Against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and Lt. Lajewski**

106.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

107.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

108.    In the manner described more fully above, the Defendants engaged in extreme and outrageous conduct.

109.    Defendants' actions set forth above were rooted in an abuse of power or authority.

110.    Defendants' actions set forth above were undertaken with intent to inflict severe emotional distress or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard for that probability.

111.    Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff CHAD JOHNSON.

112.    The actions described in this Count were undertaken by Defendants acting within the scope of their employment such that their employer is liable for their actions.

113.    As a result of Defendants' misconduct described in this Count, Plaintiff CHAD JOHNSON experienced and continues to experience pain, suffering and emotional distress.

WHEREFORE, Plaintiff CHAD JOHNSON demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## COUNT VII
### State Law Claim – Civil Conspiracy

**Against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and Lt. Lajewski**

114.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

115.    As described more fully in the preceding paragraphs, Defendants reached an agreement among themselves and with others, known and unknown, to violate the law and deprive Plaintiff CHAD JOHNSON of his rights.

116.    Each of the Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Plaintiff CHAD JOHNSON of his constitutional rights.

117.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the false conviction of Plaintiff CHAD JOHNSON) by unlawful means (including, falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

118.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

119.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff CHAD JOHNSON's constitutional rights.

WHEREFORE, Plaintiff CHAD JOHNSON demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## COUNT VIII
## State Law Claim – Willful & Wanton Conduct

**Against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and Lt. Lajewski**

120.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

121.    In the manner described more fully above, the actions of Defendants breached the duty of care owed to Plaintiff CHAD JOHNSON.

122.    The actions of Defendant were willful and wanton in that they demonstrated an utter indifference for the safety and well-being other others.  In addition and/or alternatively,

Defendants were conscious that an injury could result from the above-described course of action and recklessly disregarded the consequences of those actions.

123.    The misconduct described in this Count was undertaken with intentional disregard for Plaintiff CHAD JOHNSON's rights.

124.    As a result of Defendants' misconduct described in this Count, Plaintiff CHAD JOHNSON experienced and continues to experience pain, suffering and emotional distress

WHEREFORE, Plaintiff CHAD JOHNSON demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

**COUNT IX**
**State Law Claim – *Respondeat Superior***

**Against Defendant CITY OF CHICAGO**

125.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

126.    In committing the acts alleged in this Complaint, Defendants were employees, members, and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

127.    Defendant CITY OF CHICAGO is liable as principal for all torts committed by its agents.

128.    In the event that a jury finds that any of the individual defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Forman, Sgt. Rajkovich and/or Lt. Lajewski, or any unknown and/or unnamed employee or agent of the

Defendant CITY OF CHICAGO committed any unlawful acts upon which Plaintiff CHAD JOHSON'S Complaint is premised under state law, then Defendant CITY OF CHICAGO is liable for the acts of that employee or agent.

WHEREFORE, Plaintiff CHAD JOHNSON demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich, and Lt. Lajewski for compensatory damages, costs, and such other and additional relief that this Court deems equitable and just.

## COUNT X
### State Law Claim – Indemnification Under 745 ILCS 10/9-102

#### Against Defendant CITY OF CHICAGO

129.    Each of the foregoing paragraphs are incorporated as if restated fully herein.

130.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102.

131.    Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and/or Lt. Lajewski are, or were, employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described above.

132.    Defendant CITY OF CHICAGO is obligated to pay any judgment for compensatory damages entered against individual defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William

Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Gorman, Sgt. Rajkovich and/or Lt. Lajewski.

133.    In the event that a judgment for compensatory damages is entered against individual defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Sgt. K. Williams, P.O. Soltis, Daniel Forman, Sgt. Rajkovich and/or Lt. Lajewski, Defendant CITY OF CHICAGO must pay the judgment and may pay the associated attorneys' fees and costs.

## JURY DEMAND

Plaintiff CHAD JOHNSON hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: June 11, 2019

Respectfully submitted,

/s/Devlin J. Schoop
Devlin J. Schoop
One of the Attorneys for Plaintiff Chad Johnson

Devlin J. Schoop
Christopher W. Carmichael
**HENDERSON PARKS, LLC**
140 South Dearborn, Suite 1020
Chicago, IL 60603
Phone: (312) 262-2900
Facsimile: (312) 262-2901
dschoop@henderson-parks.com
ccarmichael@henderson-parks.com