## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHAD JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-CV-03904 |
| | ) | |
| CITY OF CHICAGO, RON KIMBALL, | ) | |
| DETECTIVE KEVIN O'BRIEN, | ) | |
| STAR NO. 60001, P.O. VANESSA | ) | |
| MUHAMMAD, STAR NO. 12835, | ) | |
| DETECTIVE KAREN WILLIAMS, | ) | |
| STAR NO. 20837, DETECTIVE | ) | |
| THOMAS CEPEDA, STAR NO. 20852 | ) | |
| DETECTIVE MICHAEL O'DONNELL | ) | |
| STAR NO. 60029,DETECTIVE E. | ) | |
| JACKSON, STAR NO. 21250, | ) | |
| DETECTIVE WILLIAM PROCTOR, | ) | |
| STAR NO. 20139, DETECTIVE, | ) | |
| WILLIAM GEHRKE, STAR NO. 20385 | ) | |
| DETECTIVE TIMOTHY J. O'BRIEN, | ) | |
| STAR NO. 20034 or 21797, | ) | |
| DETECTIVE DANIEL GORMAN, | ) | |
| STAR NO. 20275, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiff Chad Johnson complains against Defendants City of Chicago, Ron

Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda,

Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Timothy J.

O'Brien, and Daniel Gorman as follows:

## Summary

1.      On February 1, 2004, Super Bowl Sunday, a drive-by shooting occurred outside Mr. G's Food and Liquor Store located at 332 E. 58th Street in Chicago, Illinois.  Christopher Dorbin, Desi Jones, Kentrae Wade and Carol Holt were all injured by the shots that were fired, and Dorbin later died of his injuries on March 18, 2004.

2.      Plaintiff Chad Johnson, who was in Kentucky on February 1, 2004 and was innocent of the crimes committed outside of Mr. G.'s on February 1, 2004, was later detained and charged in connection with the drive-by shooting that he did not commit. tret

3.       On March 29, 2007, Indictment Number 07 CR 7156 was issued against Plaintiff Chad Johnson for eight counts of first-degree murder, three counts of attempted first-degree murder, three counts of aggravated battery with a firearm, three counts of aggravated discharge of a firearm, nine counts of aggravated battery, and four counts of aggravated unlawful use of a weapon.  Plaintiff Chad Johnson was and is actually innocent of these charges.

4.      Plaintiff Chad Johnson was and is actually innocent of all of these charges because he was not inside the City of Chicago on February 1, 2004 and had never discharged a firearm at anyone outside of Mr. G's as alleged in the criminal indictment unlawfully initiated against Plaintiff Chad Johnson based on fabricated reports and misinformation supplied by the individual defendants during the course

of their investigation of the February 1, 2004 Mr. G's shooting and during two subsequent criminal proceedings in the Circuit Court of Cook County.

5. In March 2009, after a two-day jury trial, Plaintiff Chad Johnson was convicted on one count of first-degree murder of Christopher Dorbin, and three counts of aggravated discharge of a firearm from a vehicle.

6. Cook County Circuit Judge Diane Gordon Cannon sentenced Plaintiff Chad Johnson to fifty years for first degree murder and ten years for each of the three counts of aggravated battery with a firearm, with all of the sentences to run consecutively, for a total of eighty years to be served in the custody of the Illinois Department of Corrections.

7. On March 23, 2012, the Illinois Appellate Court, First District, reversed the conviction of Plaintiff Chad Johnson based, in part on the bias demonstrated by the trial judge and the improper exclusion of material evidence, and remanded the criminal proceeding for a new trial before another judge.  (*See* Exhibit A.)

8. Upon remand, Plaintiff Chad Johnson had his criminal proceeding reassigned to the Cook County Associate Judge Joseph Clapps for a new trial.

9. A second jury trial of Plaintiff Chad Johnson was convened in June 2018.

10. On June 11, 2018, a jury found Plaintiff Chad Johnson not guilty of all counts.

11.     Plaintiff Chad Johnson was released from the custody of the Cook County Department of Corrections the following day on June 12, 2018.

12.     By the time of his release from custody, Plaintiff Chad Johnson had been unlawfully detained as a result of the two criminal proceedings for approximately seven years for crimes that Plaintiff Chad Johnson did not commit.

13.     In 2019, Plaintiff Chad Johnson was declared actually innocent of the charges by the Circuit Court of Cook County.

## Jurisdiction and Venue

14.     The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. §§ 1331 and 1343(a), the Constitution of the United States, and supplemental jurisdiction, as provided under 28 U.S.C. § 1367(a).

15.     Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391 because the acts and events giving rise to the complaint occurred in the Northern District of Illinois, Eastern Division and because, upon information and belief, the Defendants reside here.

## Parties

16.     Plaintiff Chad Johnson is currently a citizen of the United States and resident of the City of Chicago, Illinois.

17.     At the time of the events at issue, Plaintiff Chad Johnson was residing in the State of Kentucky.

18.     Defendant Chad Johnson is and was, at all times mentioned herein, an Illinois municipal corporation organized and existing as such under the laws of the State of Illinois.

19.     Defendant City of Chicago is liable under the doctrine of *respondeat superior* for all torts committed by its employees and/or agents, including the named individual defendants who, at all times mentioned herein, were employees of the City of Chicago and acting within the scope of their employment.

20.     Defendant Ron Kimball is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

21.     At all times herein mentioned, Ron Kimball was acting under color of state law and within the scope of his employment for the City of Chicago.  He is being sued in his individual capacity.

22.     Defendant Kevin O'Brien is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

23.     At all times herein mentioned, Kevin O'Brien was acting under color of state law and within the scope of his employment for the City of Chicago.  He is being sued in his individual capacity.

24.     Defendant Vanessa Muhammad is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

25.     At all times herein mentioned, Vanessa Muhammad was acting under color of state law and within the scope of her employment for the City of Chicago. She is being sued in her individual capacity.

26.     Defendant Karen Williams, is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

27.     At all times herein mentioned, Karen Williams was acting under color of state law and within the scope of her employment for the City of Chicago. She is being sued in her individual capacity.

28.     Defendant Thomas Cepeda is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

29.     At all times herein mentioned, Thomas Cepeda was acting under color of state law and within the scope of his employment for the City of Chicago. He is being sued in his individual capacity.

30.     Defendant Michael O'Donnell is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

31.     At all times herein mentioned, Michael O'Donnell was acting under color of state law and within the scope of his employment for the City of Chicago. He is being sued in his individual capacity.

32.     Defendant E. Jackson is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

33.    At all times herein mentioned, Defendant E. Jackson was acting under color of state law and within the scope of Jackson's employment for the City of Chicago.  Defendant E. Jackson is being sued in Jackson's individual capacity.

34.    Defendant William Proctor is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

35.    At all times herein mentioned, William Proctor was acting under color of state law and within the scope of his employment for the City of Chicago.  He is being sued in his individual capacity.

36.    Defendant William Gehrke is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

37.    At all times herein mentioned, William Gehrke was acting under color of state law and within the scope of his employment for the City of Chicago.  He is being sued in his individual capacity.

38.    Defendant Timothy J. O'Brien is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

39.    At all times herein mentioned, Timothy J. O'Brien was acting under color of state law and within the scope of his employment for the City of Chicago. He is being sued in his individual capacity.

40.    Defendant Daniel Gorman is and was, at all times herein mentioned, a citizen of the United States residing within the jurisdiction of this Court.

41.     At all times herein mentioned, Daniel Gorman was acting under color of state law and within the scope of his employment for the City of Chicago.  He is being sued in his individual capacity.  (Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepada, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Timothy J. O'Brien, and Daniel Gorman are referred to collectively as the "Individual Defendants").

## Facts

### Chad Johnson was in Fulton, Kentucky on February 1, 2004

42.     On February 1, 2004, Plaintiff Chad Johnson was never physically present inside the City of Chicago and it was impossible for him to be.

43.     On February 1, 2004, Plaintiff Chad Johnson was residing in Fulton, Kentucky, near his girlfriend, Joyce Williams.

44.     On February 1, 2004, at least three different eyewitnesses observed how Plaintiff Chad Johnson was, in fact, physically present in Fulton, Kentucky.

45.     These witnesses included his girlfriend, Joyce Williams who spoke with Chad Johnson before going shopping with her mother that day; and Ora Russell (Joyce's mother) who saw Chad Johnson speaking with Joyce moments before Joyce and Ora went shopping on February 1, 2004.

46.     Later that same day, February 1, 2004, Chad Johnson attended a Super Bowl party at the Spot Bar and Grill which is also located in Fulton, Kentucky.

47.     Gloria Johnson, a bartender at the Spot Bar, observed Chad Johnson present both in the parking lot when she arrived to work at approximately 4:30 p.m. on February 1, 2004, and later, inside the bar, while the Super Bowl game was still underway.[1]

### The noon drive-by shooting at Mr. G's on February 1, 2004

48.     On February 1, 2004, Mr. G's Food and Liquor Store was a local grocery and liquor store located at 332 E. 58th Street in Chicago, Illinois. Mr. G.'s is located on 58th Street between Calumet and Prairie Avenues.

49.     Just before noon, a dark-colored four-door Dodge Intrepid sports utility vehicle was driving the wrong way—southbound—on the 5800 block of South Calumet Avenue in Chicago. The 5800 block of South Calumet Avenue is designated as a one-way street with traffic travelling in a northbound direction.

50.     The Dodge Intrepid turned onto 58th Street and, as it passed Mr. G.'s, a masked gunman pointed a gun out of an open window and opened fire on a group of persons standing outside Mr. G's.

51.     Christopher Dorbin, Desi Jones, Kentrae Wade, and Carol Holt were all injured by the shots that were fired.

52.     On March 18, 2004, Christopher Dorbin later died from the injuries that he sustained from the February 1, 2004 drive-by shooting.

---

[1] The 2004 Super Bowl was memorable for reasons independent of the game itself. 2004 was NFL Super Bowl XXXVIII between the Carolina Panthers and New England Patriots; the Patriots defeated the Panthers, 32-29. But what many people remember the most about that Super Bowl was the half-time performance of Janet Jackson and Justin Timberlake during which Ms. Jackson experienced the famous "wardrobe malfunction" causing one of her breasts to be briefly exposed from her outfit on live television.

53.     Defendant Vanessa Muhammad was on duty in the vicinity of Mr. G's and was one of the first officers who responded to the shooting and observed people on the sidewalk outside and others inside that were injured.

54.     Upon her arrival, Defendant Vanessa Muhammad was the preliminary investigator and interviewed several witnesses, starting what would become the Chicago Police Department's "investigation" of the February 1, 2004 drive-by shooting at Mr. G's.

55.     Vanessa Muhammad found Kentrae Wade inside Mr. G's, which Muhammad knew would have prohibited Wade from seeing anyone inside the vehicle.

56.     Vanessa Muhammad interviewed Kentrae Wade, who claimed that he witnessed Oliver Crawford fire from the passenger side of the passing vehicle, and that he did not recognize anyone else in the vehicle.

57.     Vanessa Muhammad knew or should have known that Kentrae Wade's identification of Oliver Crawford in the vehicle was false, but Vanessa Muhammad omitted that information from reports.

**The investigation and false identification**

58.     On February 1, 2004, Defendants Kevin O'Brian and Michael O'Donnell were detectives with the Chicago Police Department assigned to what was previously known to as the Chicago Police Department's "Area 1," a specific geographic area of the city wherein the Chicago Police department patrols and investigates crimes.

59.     On February 1, 2004, Defendants Kevin O'Brian and Michael O'Donnell were partners and were assigned to investigate the Mr. G.'s drive-by shooting and began interviewing witnesses and gathering information.

60.     Defendants Kevin O'Brian and Michael O'Donnell interviewed potential witnesses, attempted to locate physical evidence, and searched for potential video of the incident.

61.     Defendants Kevin O'Brian and Michael O'Donnell each spoke with potential witnesses and were involved in gathering evidence that was used to detain and prosecute Chad Johnson.

62.     Defendants Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Timothy J. O'Brien, and Daniel Gorman assisted Defendants Kevin O'Brien and Michael O'Donnell with the investigation of the Mr. G's shooting, by, among other things, interviewing witnesses, conducting a canvass of the area, securing potential evidence, including spent shell casings, and, upon information and belief, attempting to locate and secure third-party video surveillance footage that might have assisted in the actual identification of the persons occupying the dark-colored Dodge Intrepid.

63.     Defendant Detectives Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien each interviewed material witnesses to the events and relayed that information in reports that were used as the basis to arrest and bring charges against Chad Johnson.

64.     Defendants Gehrke and Cepeda conducted lineups with witnesses who were unable to identify anyone in the Dodge Intrepid, and were not able to identify Chad Johnson.

65.     Defendants Gehrke and Cepeda reported, falsely, that witnesses could potentially identify those persons in the vehicle even though the witnesses indicated otherwise during lineups.

66.     Defendants Proctor and Jackson interviewed witnesses after the shooting and those witnesses were unable to identify Chad Johnson as an occupant of the Dodge Intrepid.

67.     Defendants Proctor and Jackson reported, falsely, that witnesses might potentially identify those persons in the vehicle even though the witnesses indicated otherwise.

68.     Defendants Gehrke, Cepeda, Proctor, and Jackson worked to create the impression that the occupants of the vehicle could be identified, knowing that was both untrue and that as time passed misidentification would become more likely, because there was tremendous pressure to find someone to hold responsible for the drive-by.

69.     The Chicago Police Department never located the dark-colored Dodge Intrepid used to commit the February 1, 2004 drive-by shooting at Mr. G.'s.

70.     Apart from spent shell casings found at the shooting scene outside of Mr. G's, the Chicago Police Department never recovered any physical evidence of

the drive-by shooting prior to initiating criminal proceedings against Plaintiff Chad Johnson for the February 1, 2004 drive-by shooting at Mr. G's.

71.     The Defendants never recovered fingerprints belonging to Plaintiff Chad Johnson from any of the spent shell casings found at the shooting scene.

72.     The Defendants never recovered blood, sweat, or any other form of DNA evidence linking Plaintiff Chad Johnson to the February 1, 2004 drive-by shooting at Mr. G's.

73.     The Defendants, on information and belief, did not recover third-party video surveillance footage and/or bystander cellphone video or still pictures capturing the drive-by shooting to enable the authorities to accurately and reliably identify the physical description of the vehicle, the occupants of the vehicle, and/or the types of weapons used to commit the drive-by shooting.

74.     On the day of the shooting, the Defendants interviewed some, but not all, of the persons who witnessed what had happened. The Defendants interviewed Carol Holt, who had been shot that day.

75.     Holt, like most of the other witnesses, informed the Defendants that Holt was unable to identify any of the occupants of the vehicle used to commit the drive-by shooting.

76.     Defendant Gorman interviewed Stacey Murray, who was driving in another vehicle, and informed Gorman that he saw two men—Ricardo Lee ("Crusher") and Oliver ("O.C.") Crawford—as the occupants of the Dodge Intrepid used in the drive-by.

77.     Stacey Murray did not identify Plaintiff Chad Johnson as being an occupant in the Dodge Intrepid, and did not identify Johnson as riding in the front passenger seat of the Dodge Intrepid.

78.     Defendant Gorman knew, from Stacey Murray, that Chad Johnson was not an occupant of the Dodge Intrepid, but worked with the other Individual Defendants to avoid reporting this inconsistent information.

79.     Further, Defendant Gorman knew or should have known of any bias possessed by Stacey Murray and did not fully explore or disclose this information beyond the Individual Defendants because it would have undermined the effort to close the case.

80.     While still on scene, Defendants Vanessa Muhammad and Karen Williams interviewed Christopher Dorbin, who purportedly identified Ricardo Lee and Oliver Crawford as occupants of the Dodge Intrepid.

81.     Prior to his death, upon information and belief, Christopher Dorbin gave no electronically recorded interview and did not give a written statement ever identifying Plaintiff Chad Johnson as being present on February 1, 2004 or being any of the people who opened fire that day.

82.     Desi Jones, a self-admitted member of the Gangster Disciples street gang, was interviewed by Defendant Karen Williams wherein Jones allegedly identified Plaintiff Chad Johnson as an occupant of the dark-colored Dodge Intrepid and one of the persons who shot at Jones.

83.     Defendant Williams learned during the course of the investigation that Jones had a motivation to give a false statement against Plaintiff Chad Johnson due to personal animosity harbored by Jones against Plaintiff Chad Johnson because of an ongoing gang conflict on 58th Street involving competing factions of the Gangster Disciples street gang.

84.     Defendant Williams, and the other Individual Defendants suspected and later confirmed that Desi Jones was lying about Plaintiff Chad Johnson because of the prior animosity between the two, and because Desi Jones admittedly did not see the faces of the persons who fired the shots and identified Plaintiff Chad Johnson solely out of retribution.

85.     Defendant Williams, in reporting about Jones' identification, did not properly and fully disclose Jones' motivation to lie and her own suspicion that Jones was fabricating the identification of Chad Johnson, in order to close the case out.

86.     When investigating a gang-retaliation event, Defendant Williams and the other Individual Defendants were aware that witnesses would have motivations to lie and that identifications were likely to false, if they were provided.

87.     Defendant Williams and the other Individual Defendants were aware that Jones' purported identification of Chad Johnson was false because other eyewitnesses who unequivocally stated that the perpetrators were masked and Chad Johnson was not one of the people involved.

88.     During the course of the criminal investigation, the Individual Defendants learned from Arthur Randle, a neighborhood barber and mutual friend

of both Desi Jones and Plaintiff Chad Johnson, that Randle spoke with Desi Jones approximately three weeks after the Mr. G's shooting about Jones' observations. Randle offered to testify and informed the Individual Defendants that Desi Jones told Randle that Jones had not seen the person who fired the shots from the Dodge Intrepid.

89.     Christopher Dorbin told Defendant Muhammad, that Crawford and Lee were the only persons in the Dodge Intrepid.

90.     Kentrae Wade told Defendant Muhammad that only Crawford was in the back seat of the Dodge Intrepid and that Wade was unable to identify anyone else in the vehicle.

91.     Kentrae Wade was subsequently interviewed by Defendant O'Donnell approximately two weeks after the incident occurred, and provided information that was inconsistent with his earlier statements.

92.     Defendant O'Donnell was aware that Desi Jones was acting as an intermediary and had spoken with Kentrae Wade prior to the second interview, and that Desi Jones had personal animosity towards Chad Johnson.

93.     Defendant O'Donnell knew and informed the other Individual Defendants how O'Donnell was able to contact Kentrae Wade, or that Desi Jones was influencing Kentrae Wade to change his prior statements and implicate Chad Johnson at the behest of Desi Jones, but did not disclose this information to others.

94.     The information gathered by Kevin O'Brien, Vanessa Muhammad, Michael O'Donnell, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor,

William Gehrke, Daniel Gorman, was shared by Detective Timothy J. O'Brien, who prepared a series of reports, with lead detectives Kevin O'Brien and Michael O'Donnell.

95.     The reports and information shared by Defendant Timothy J. O'Brien was intended to and did provide the basis to arrest and prosecute Chad Johnson.

96.     Defendants Kevin O'Brien, Vanessa Muhammad, Michael O'Donnell, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman and Timothy J. O'Brien met at different times and locations and had discussions about how to recommend and pressure prosecutors to arrest and prosecute Chad Johnson.

### Eyewitness Joe Cobbins' February 1, 2004 related material information about the Mr. G's drive-by shooting

97.     During the course of the Defendants' "investigation" of the February 1, 2004 Mr. G.'s shooting, the Defendants became aware of another eyewitness who was able to provide evidence which exculpated Chad Johnson from the Mr. G.'s shooting:  Joe Cobbins.

98.     On February 1, 2004, Joe Cobbins, was walking on 58th Street and observed the dark-colored Dodge Intrepid approach Mr. G's and had a clear and unobstructed view of the events that transpired.

99.     Mr. Cobbins saw that three men were occupying the dark-colored Dodge Intrepid.  All three of the men were wearing ski-masks, making it impossible for any person to identify the perpetrators by facial recognition.  Mr. Cobbins was

able to observe the men through the front windshield which was the only window of the vehicle that did not have tinted glass.

100. Mr. Cobbins observed the dark-colored Dodge Intrepid drive pass Mr. G.'s and witnessed multiple gunshots being fired from the dark-colored Dodge Intrepid, striking several persons standing in front of Mr. G.'s.

101. After the dark-colored Dodge Intrepid fled the scene, Mr. Cobbins returned to his nearby residence to gather himself after witnessing the incident.

102. While standing on the back porch of his residence, Mr. Cobbins saw the dark-colored Dodge Intrepid driving down the alley behind his apartment and stop behind the garage belonging to the apartment adjacent to Mr. Cobbins' apartment.

103. While standing on his back porch, Cobbins observed a man exit the dark-colored Dodge Intrepid. The man was wearing a black ski-mask and holding what appeared to be a laundry bag over his shoulder. As the man was standing next to the Dodge Intrepid, he rolled up his ski mask revealing his face. Mr. Cobbins immediately recognized the person as Radsheen Shepard. Shepard, whose nickname was "Debo," lived in the apartment building immediately adjacent to Mr. Cobbins.

104. Mr. Cobbins also observed two other men sitting in the dark-colored Dodge Intrepid. While neither of the men exited the vehicle or removed their masks, Mr. Cobbins was able to observe their general physical builds.

105. Mr. Cobbins observed Shepard enter the apartment building next door, carrying what appeared to be a laundry bag. Having just recently observed the

Mr. G's shooting, Mr. Cobbins immediately believed that Shepard and the two other men sitting in the Dodge Intrepid were the perpetrators of the Mr. G's shooting because they all wore the same black ski masks and were in a dark-colored Dodge Intrepid similar to the one that Mr. Cobbins had observed earlier.

106.     A few minutes later, Mr. Cobbins observed Shepard exit his apartment building without the laundry bag.  Mr. Cobbins suspected that Shepard had used the laundry bag to transport the weapons used in the earlier drive-by shooting into the apartment.

107.     Mr. Cobbins contacted Ron Kimball or another Chicago Police Detective, and explained what he had observed, including how he saw:  the shooting transpire outside Mr. G.'s; Shepard a/k/a "Debo" exit from the same dark-colored Dodge Intrepid used in the Mr. G's shooting wearing a black ski-mask; Shepard lift up his ski-mask revealing his face; Shepard carrying the laundry bag into his apartment which Mr. Cobbins believed was used to carry the weapons into Shepard's apartment.

108.     The information that Mr. Cobbins related was obviously material to the investigation because it contradicted any purported eyewitness account of Desi Jones or any of the other persons shot outside who claimed to have seen the face of any alleged shooters because, as confirmed by Mr. Cobbins, all of the occupants inside the dark-colored Dodge Intrepid were wearing black ski-masks.

109.     The information that Mr. Cobbins related was obviously material to the investigation because it contradicted any purported eyewitness account that

Plaintiff Chad Johnson participated in the Mr. G's drive-by shooting because, as confirmed by Mr. Cobbins, it was Shepard—not Plaintiff Chad Johnson—who Mr. Cobbins observed wearing a ski-mask after exiting the same dark-color Dodge Intrepid shortly after the drive-by shooting, carrying a bag that clearly was being used to conceal the weapons used to commit the crime while Shepard took them inside his apartment.

110.    The information that Mr. Cobbins related was obviously material to the investigation because it would have provided the Defendants with probable cause to obtain a search warrant of Shepard's apartment to search for the weapons used to commit the Mr. G.'s drive-by shooting.

111.    Later, after learning that Plaintiff Chad Johnson had been charged with the Mr. G's shooting, Mr. Cobbins again contacted Ron Kimball or another a Chicago Police Detective to reiterate what Mr. Cobbins had related in their earlier conversation, this time adding the detail that Mr. Cobbins did not believe that Plaintiff Chad Johnson was involved in the Mr. G's shooting because Mr. Cobbins actually saw Shepard's face when he lifted up his ski-mask and the other two masked men were, physically, too small to be Plaintiff Chad Johnson, who stands over 6 feet tall and has a large physical stature.

112.    The Defendants, upon information and belief, became aware of this exculpatory information and knowingly and intentionally agreed to omit this information from all investigatory reports and knowingly and intentionally failed to disclose the existence of Mr. Cobbins' information any time during the shooting

investigation or at any time during the pendency of Chad Johnson's first trial in March 2009 or second trial in June 2018.

113.   Because it did not fit with the narrative they constructed, the Defendants, upon information and belief, knowingly and intentionally agreed to conduct no follow-up investigation on the information related by Mr. Cobbins, including not obtaining a search warrant to locate the weapons used to commit the Mr. G.'s drive-by shooting.

## Defendants Cause the Prosecution of Plaintiff

114.   At some point, during the course of the investigation Defendants Kevin O'Brien, Michael O'Donnell, Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien learned that Chad Johnson was in Kentucky on February 1, 2004, and rather than look into and corroborate this true and verifiable fact, they sought to conceal, minimize, and dismiss this critical piece of exculpatory evidence.

115.   Even with the information that Chad Johnson was in Kentucky at the time of the shooting and not in the Dodge Intrepid and was the target of a gang-retaliation-identification orchestrated by Desi Jones, Defendants Kevin O'Brien, Michael O'Donnell, Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien, proceeded to arrest and prosecute Chad Johnson.

116.   Defendants Kevin O'Brien, Michael O'Donnell, Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke,

Daniel Gorman, and Timothy J. O'Brien knew that prosecutors would rely on their investigation and the information they reported to prosecutors in moving forward with a prosecution and indictment.

117.    Defendants Kevin O'Brien, Michael O'Donnell, Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien saw that the misinformation that they had collected was provided to encourage the prosecution of Chad Johnson, and they concealed the exculpatory evidence about the truth that Chad Johnson was not in the subject vehicle.

118.    Despite knowing the true facts, Defendants Kevin O'Brien, Michael O'Donnell, Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien recommended to the Cook County State's Attorney that Chad Johnson be criminally prosecuted.

119.    Defendants Kevin O'Brien, Michael O'Donnell, Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien did not disclose or note the inconsistencies in the Desi Jones identification, the objective falsities that existed, or any of the other exculpatory evidence that existed.

120.    As a result of Defendants Kevin O'Brien, Michael O'Donnell, Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien efforts to support criminal

charges, Chad Johnson was charged with multiple counts of aggravated unlawful use of a weapon, aggravated battery with a deadly weapon, attempted murder, and murder.

121.    The charges and any indictment of Chad Johnson was based on the recommendation, information, and false evidence obtained Defendants Kevin O'Brien, Michael O'Donnell, Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien, and based on the exculpatory evidence that the Individual Defendants withheld.

122.    Defendants Kevin O'Brien, Michael O'Donnell, Vanessa Muhammad, Karen Williams, Thomas Cepeda, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien provided or knowingly participated in the provision of false information to the Cook County State's Attorney to cause a wrongful prosecution of Chad Johnson or concealed exculpatory evidence.

**Defendants Testify at the 2009 Trial**

123.    Defendants Cepeda, Muhammad, O'Donnell, Proctor, and Williams provided testimony at trial in March 2009 against Plaintiff Chad Johnson that caused Plaintiff's conviction and prolonged his detention.

124.    Cepeda's, Muhammad's, O'Donnell's, Proctor's, and Williams' willingness to provide testimony against Chad Johnson was material to brining and continuing the prosecution of Chad Johnson.

125.    Without the testimony by Cepeda, Muhammad, O'Donnell, Proctor, and Williams, the prosecution of Chad Johnson would not have been possible.

**The 2009 recovery of the murder weapon
that went uninvestigated by Defendants**

126.    On March 28, 2009, Chicago Police Officers Andrew Schurman and Steve Lavell were tactical officers assigned to Chicago Police Department's Seventh District.  Officers Schurman and Lavell did not respond to the February 1, 2004 Mr. G's drive-by shooting and never participated in the subsequent criminal investigation of the drive-by shooting.

127.    On March 28, 2009, while on routine patrol, Officers Schurman and Lavell responded to a call concerning a fight at a gas station located at 5901 South Morgan Street.

128.    Upon arriving at the gas station, Officers Schurman and Lavell observed a large group of people congregating in the gas station and blue car parked near a gas pump.

129.    As Officers Schurman and Lavell approached the blue car, they observed a male throw what was later determined to be a handgun from the passenger side window.

130.    Officers Schurman and Lavell detained and arrested the person observed throwing the handgun out of the passenger side window and learned that the person was 17-year-old "R.C."[2]

---

[2] R.C. was a minor at the time of arrest, prohibiting counsel from identifying him by his full name due to the Illinois Juvenile Court Act.  Upon entry of the appropriate confidentiality order, Plaintiff

131.    The handgun retrieved from R.C. was sent to the forensics laboratory of the Illinois State Police and was determined to be a weapon from which at least one bullet was discharged on February 1, 2004 during the Mr. G's drive-by shooting.

132.    The Individual Defendants were made aware of the recovered handgun because the Illinois State Police had connected the recovered handgun with the Mr. G.'s drive-by shooting and the Individual Defendants were previously assigned to that case.

133.    The Individual Defendants knowingly and intentionally declined to conduct any follow-up investigation of R.C. to determine the circumstances in which R.C. acquired the handgun because the Defendants instead wanted to rely on what they knew was knowingly false evidence from Desi Jones in order to maintain the wrongful conviction that had only recently been obtained against Plaintiff Chad Johnson.

## Defendants Testify at the 2018 Trial

134.    Defendants Gehrke, Gorman, Muhammad, O'Donnell, and Williams provided testimony at trial in June 2018 against Plaintiff Chad Johnson, and after hearing from those Defendants the jury determined that Chad Johnson was not guilty.

135.    Gehrke's, Gorman's, Muhammad's, O'Donnell's, and Williams' willingness to testify again supported the prosecution of Chad Johnson.

---

will disclose the identity of "R.C." as required by Fed. R. Civ. P. 26(a)(1) or any disclosure requirements mandated by the local rules of Northern District of Illinois.

## Count I

### 42 U.S.C. § 1983 – Illegal Pretrial Detention (*Manuel*)
(Against the Individual Defendants)

136.   Each of the foregoing paragraphs are incorporated herein.

137.   The Individual Defendants deprived Plaintiff Chad Johnson of fair criminal proceedings.

138.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff Chad Johnson's constitutional rights.

139.   Plaintiff Chad Johnson's detention of approximately seven years was due to the Individual Defendants' fabricated evidence in their police reports, criminal complaints and/or testimony rendered during the underlying criminal proceedings in the matter captioned *People of the State of Illinois v. Chad Johnson*, 07 CR 07156-02.

140.   As a result of this misconduct, Plaintiff Chad Johnson was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

WHEREFORE, Plaintiff Chad Johnson demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

## Count II

### 42 U.S.C. § 1983 – Conspiracy to Deprive of Constitutional Rights
(Against the Individual Defendants)

141.    Each of the foregoing paragraphs are incorporated herein.

142.    Each of the Individual Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Plaintiff Chad Johnson of his constitutional rights.

143.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the false conviction of Plaintiff Chad Johnson) by unlawful means (including, falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

144.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

145.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff Chad Johnson's constitutional rights.

WHEREFORE, Plaintiff Chad Johnson demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien for compensatory damages, punitive damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

## Count III

### 42 U.S.C. § 1983 – Failure to Intervene
(Against the Individual Defendants)

146.    Each of the foregoing paragraphs are incorporated herein.

147.    During the constitutional violations described herein, one or more of the Individual Defendants stood by without intervening to prevent the violation of Plaintiff Chad Johnson's constitutional rights, even though they had the opportunity to do so.

148.    The Individual Defendants each refused to intervene and report or disclose exculpatory information learned during the course of the underlying criminal investigation in furtherance of the "code of silence" among these officers of the Chicago Police Department.

149.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff Chad Johnson's constitutional rights.

150.    As a result of Individual Defendants' misconduct described in this Count, Plaintiff Chad Johnson was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

WHEREFORE, Plaintiff Chad Johnson demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien for compensatory damages, punitive

damages, costs, reasonable attorneys' fees and such other and additional relief that this Court deems equitable and just.

## Count IV

### State Law Claim – Malicious Prosecution (The First Trial)
(Against the Individual Defendants)

151.    Each of the foregoing paragraphs are incorporated herein.

152.    The Individual Defendants caused a criminal prosecution to commence and/or continue against Plaintiff Chad Johnson resulting in the March 2009 criminal proceeding before Cook County Circuit Judge Diane Gordon Cannon.

153.    The Individual Defendants maliciously commenced and/or continued a criminal prosecution against Plaintiff Chad Johnson without probable cause for the commencement and/or continuation of those proceedings before Judge Diane Gordon Cannon.

154.    As a result, Plaintiff Chad Johnson was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

155.    The Individual Defendants, initiated, facilitated and/or continued this malicious prosecution by the creation of manufactured and fabricated evidence, including writing false police reports, preparing and signing false criminal complaints, conducting unduly prejudicial, misleading, suggestive and/or coercive physical lineups or photo arrays, giving false testimony and/or otherwise wrongfully misrepresenting and/or withholding evidence.

156.    The criminal proceedings were ultimately terminated in Plaintiff Chad Johnson's favor as a result of the First District Appellate Court decision which overturned Plaintiff Chad Johnson's criminal conviction.

WHEREFORE, Plaintiff Chad Johnson demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## Count V

### State Law Claim – Malicious Prosecution (The Second Trial)
(Against the Individual Defendants)

157.    Each of the foregoing paragraphs are incorporated herein.

158.    The Individual Defendants caused a criminal prosecution to commence and/or continue against Plaintiff Chad Johnson resulting in the June 2018 re-trial of Plaintiff Chad Johnson before Cook County Associate Judge Joseph Clapps.

159.    The Individual Defendants maliciously commenced and/or continued a criminal prosecution against Plaintiff Chad Johnson without probable cause for the commencement and/or continuation of those proceedings before Cook County Associate Judge Joseph Clapps.

160.    The Individual Defendants concealed and failed to disclose the recovery of the weapon involved in the shooting, and affirmatively decided not to

investigate that weapon's recovery in order to continue the prosecution of Chad Johnson.

161.    As a result, Plaintiff Chad Johnson was injured, including a loss of liberty, physical and emotional damages, legal fees, trauma, mental distress and emotional damages.

162.    The Individual Defendants, initiated, facilitated and/or continued this malicious prosecution by the creation of manufactured and fabricated evidence, including writing false police reports, preparing and signing false criminal complaints, conducting unduly prejudicial, misleading, suggestive and/or coercive physical lineups or photo arrays, giving false testimony and/or otherwise wrongfully misrepresenting and/or withholding evidence.

163.    The criminal proceedings were terminated in Plaintiff Chad Johnson's favor on June 11, 2018 when the jury found Plaintiff Chad Johnson not guilty in a manner indicative of his actual innocence of the crimes charged.

WHEREFORE, Plaintiff Chad Johnson demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## Count VI

## <u>State Law Claim – Intentional Infliction of Emotional Distress</u>
(Against the Individual Defendants)

164.    Each of the foregoing paragraphs are incorporated herein.

165.    In the manner described more fully above, the Individual Defendants engaged in extreme and outrageous conduct.

166.    Individual Defendants' actions set forth above were rooted in an abuse of power or authority.

167.    Individual Defendants' actions set forth above were undertaken with intent to inflict severe emotional distress or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard for that probability.

168.    Individual Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff Chad Johnson.

169.    The actions described in this Count were undertaken by Defendants acting within the scope of their employment such that their employer is liable for their actions.

170.    As a result of Individual Defendants' misconduct described in this Count, Plaintiff Chad Johnson experienced and continues to experience pain, suffering and emotional distress.

WHEREFORE, Plaintiff Chad Johnson demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke,

Daniel Gorman, and Timothy J. O'Brien for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

## Count VII

### <u>State Law Claim – Civil Conspiracy</u>
(Against the Individual Defendants)

171.   Each of the foregoing paragraphs are incorporated herein.

172.   As described more fully in the preceding paragraphs, Individual Defendants reached an agreement among themselves and with others, known and unknown, to violate the law and deprive Plaintiff Chad Johnson of his rights.

173.   Each of the Individual Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Plaintiff Chad Johnson of his constitutional rights.

174.   In so doing, these co-conspirators conspired to accomplish an unlawful purpose (the false conviction of Plaintiff Chad Johnson) by unlawful means (including, falsification of police reports, criminal complaint and giving fabricated testimony during criminal proceedings).

175.   In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

176.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff Chad Johnson's constitutional rights.

WHEREFORE, Plaintiff Chad Johnson demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

**Count VIII**

**<u>State Law Claim – Willful & Wanton Conduct</u>**
(Against the Individual Defendants)

177.     Each of the foregoing paragraphs are incorporated herein.

178.     In the manner described more fully above, the actions of Individual Defendants breached the duty of care owed to Plaintiff Chad Johnson.

179.     The actions of Individual Defendant were willful and wanton in that they demonstrated an utter indifference for the safety and well-being other others.

180.     In addition, and/or alternatively, Individual Defendants were conscious that an injury could result from the above-described course of action and recklessly disregarded the consequences of those actions.

181.     The misconduct described in this Count was undertaken with intentional disregard for Plaintiff Chad Johnson's rights.

182.     As a result of Individual Defendants' misconduct described in this Count, Plaintiff Chad Johnson experienced and continues to experience pain, suffering and emotional distress

WHEREFORE, Plaintiff Chad Johnson demands judgment against Defendants Ron Kimball, Kevin O'Brien, Vanessa Muhammad, Karen Williams, Thomas Cepeda, Michael O'Donnell, E. Jackson, William Proctor, William Gehrke, Daniel Gorman, and Timothy J. O'Brien for compensatory damages, punitive damages, costs, and such other and additional relief that this Court deems equitable and just.

**Count IX**

**<u>State Law Claim – *Respondeat Superior*</u>**
(Against Defendant CITY OF CHICAGO)

183.    Each of the foregoing paragraphs are incorporated herein.

184.    In committing the acts alleged in this Complaint, the Individual Defendants were employees, members, and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

185.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

186.    In the event that a jury finds that any of the Individual Defendants or any unknown and/or unnamed employee or agent of the Defendant City of Chicago committed any unlawful acts upon which Plaintiff Chad Johnson's Complaint is premised under state law, then Defendant City of Chicago is liable for the acts of that employee or agent.

WHEREFORE, Plaintiff Chad Johnson demands that the City of Chicago be held liable for any acts of the Individual Defendants resulting in compensatory

damages, costs, and such other and additional relief that this Court deems equitable and just.

## Count X

### State Law Claim – Indemnification
(Against Defendant CITY OF CHICAGO)

187.    Each of the foregoing paragraphs are incorporated herein.

188.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.  745 ILCS 10/9-102.

189.    The Individual Defendants are, or were, employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described above.

190.    Defendant City of Chicago is obligated to pay any judgment for compensatory damages entered against the Individual Defendants.

WHEREFORE, in the event that a judgment for compensatory damages is entered against the Individual Defendants, Plaintiff prays that a judgment be entered against Defendant City of Chicago requiring payment of any such judgment and the associated attorneys' fees and costs.

## <u>JURY DEMAND</u>

Plaintiff Chad Johnson hereby demands a trial by jury pursuant to Federal

Rule of Civil Procedure 38(b) on all issues so triable.

**PLAINTIFF CHAD JOHNSON,**

By: <u>/s/Christopher Carmichael</u>
One of his Attorneys

Victor P. Henderson
Christopher W. Carmichael
Kelsey A. VanOverloop
**HENDERSON PARKS, LLC**
140 S. Dearborn St., Suite 1020
Chicago, Illinois 60603
Tel.: (312) 262-2900
vphenderson@henderson-parks.com
ccarmichael@henderson-parks.com
kvanoverloop@henderson-parks.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on **October 30, 2019**, the foregoing Plaintiff's

**Amended Complaint** was electronically filed with the Clerk of the United States

District Court for the Northern District of Illinois by filing through the CM/ECF

system, which served a copy of the foregoing upon all counsel of record.


By:/s/Christopher Carmichael